**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0581n.06
Filed: July 11, 2005

No. 03-4199

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BROOK BURCHAM; THOMAS GEORGE; LOUIS SORRENTI, | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| GREG WILT; PAUL WILSON; | ) | |
| CHARLES MARLATT; NEW | ) | |
| CASTLE TOWNSHIP, OHIO, | ) | **O P I N I O N** |
| | ) | |
| **Defendants-Appellees.** | ) | |
| _____ | ) | |

Before: MOORE and CLAY, Circuit Judges, and HAYNES,[*] District Judge.

**KAREN NELSON MOORE, Circuit Judge.** This is a nude-dancing case brought pursuant

to 42 U.S.C. § 1983. Plaintiffs-Appellants Brook Burcham ("Burcham"), Thomas George

("George"), and Louis Sorrenti ("Sorrenti") are each either owners of, investors in, or operators of

an adult cabaret known as "The Fox Hole" in New Castle Township, Ohio.[1] Defendants-Appellees

Greg Wilt ("Mr. Wilt"), Paul Wilson ("Wilson"), and Charles Marlatt ("Marlatt") are members of

---

[*]The Honorable William Joseph Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

[1]For ease of reading, we will refer to the plaintiffs-appellants collectively as "the Fox Hole Operators."

the Board of Trustees of Defendant-Appellee New Castle Township, Ohio.[2] In the district court, the Fox Hole Operators asserted that regulations adopted by the Township violated the rights guaranteed to the Fox Hole Operators by the First, Fourth, and Fourteenth Amendments of the United States Constitution. On cross-motions for summary judgment, the district court granted summary judgment to the Township and denied summary judgment to the Fox Hole Operators. We **AFFIRM** the judgment of the district court.

## I. BACKGROUND

A number of facts do not appear to be in dispute. The Fox Hole opened for business on December 3, 1999. Joint Appendix ("J.A.") at 213 (Burcham Test.). On December 23, 1999, J.A. at 222 (Robert Hertz ("Hertz") Test.), Hertz, a Fire Safety Inspector employed by the State of Ohio Division of the Fire Marshal, J.A. at 245-46 (Hertz Test.), issued an order requiring the Fox Hole to cease operation for lack of an appropriate occupancy permit. J.A. at 247-49 (Hertz Test.). Architects' plans for required improvements to the Fox Hole were received by the Mid East Ohio Building Department on February 3, 2000, and approved by that department on February 7, 2000. R. 26 at 56-58 (Waymer Test.). An occupancy permit was issued to the Fox Hole on April 11, 2000. J.A. at 261 (Waymer Test.).[3]

On December 26, 1999, the New Castle Township Board of Trustees adopted "the resolution setting hearings and ordering notice on proposed massage establishment[], adult cabaret[], and adult-

---

[2]Again for ease of reading, we will refer to the defendants-appellees collectively as the "Township."

[3]The Fox Hole has apparently operated continuously since April 11, 2000. Township Br. at 2; *see also* Fox Hole Operators' Reply Br. at 1-9 (failing to dispute Township assertion that the Fox Hole has operated continuously since April 11, 2000).

oriented business regulations." J.A. at 262 (Cynthia Wilt ("Mrs. Wilt") Test.). The New Castle Township Board of Trustees adopted the proposed regulations on February 14, 2000, J.A. at 77 (Feb. 14, 2000 Resolution), and amended the regulations on October 9, 2000. J.A. at 88 (Oct. 9, 2000 Resolution). On March 3, 2000, Burcham filed this federal-court § 1983 suit asserting that the February 14, 2000 regulations violated his rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution and seeking both monetary damages and injunctive relief.[4]

On December 4, 2000, the New Castle Township Board of Trustees filed suit in state court asking that the Fox Hole Operators[5] be enjoined from using their premises to run an adult cabaret. J.A. at 72-75 (Verified State-Court Complaint). The state-court complaint asserted that the Fox Hole violated the requirements in the October 9, 2000 regulations that an adult cabaret not be located within five-hundred feet of a parcel of real estate having situated on it a church, a park, or a single-family dwelling. The state court entered judgment against the New Castle Township Board of Trustees. It held that the February 14, 2000 regulations were defective under Ohio law for failure to comply with applicable notice requirements, and that the Fox Hole's operation between April 11, 2000 and October 9, 2000, when the amended regulations were adopted, allowed the Fox Hole to

---

[4]Brook Burcham ("Burcham") filed amended complaints on March 21, 2000 and August 7, 2000. The Original Complaint and the First Amended Complaint listed "BROOK BURCHAM d/b/a THE FOX HOLE" as sole plaintiff. *See* Joint Appendix ("J.A.") at 7 (Original Complaint); J.A. at 19 (First Amended Complaint). The Second Amended Complaint added the remaining Fox Hole Operators, Thomas George ("George") and Louis Sorrenti ("Sorrenti"). *See* J.A. at 31 (Second Amended Complaint).

[5]In addition to the Fox Hole Operators, this state-court complaint also listed Elizabeth Ciaralli ("Ciaralli") as a defendant. At the beginning of the state-court trial, the parties agreed "to dismiss Elizabeth Ciaralli as a party defendant." R. 26 at 9 (Aug. 31, 2001 Tr.).

3

be "grandfathered" in as a nonconforming use. J.A. at 128-30 (Dec. 28, 2001 Coshocton County Ct. Common Pleas Order) ("*New Castle I*").[6]

In the present case, both parties filed motions for summary judgment some time after the state court issued its decision in *New Castle I*. The district court granted summary judgment to the Township and denied summary judgment to the Fox Hole Operators. In this appeal, it appears that the Fox Hole Operators make four main arguments: (1) the decision of the state court in *New Castle I* required the federal district court to conclude that the regulations were not a legitimate attempt to regulate the secondary effects of an adult-oriented business; (2) the district court erred in failing to grant relief for the allegedly unconstitutional December 1999 closing of the Fox Hole for lack of an occupancy permit; (3) the district court erred in failing to grant relief for the period from March 2000 to November 2000 when the Fox Hole was subject to the allegedly unconstitutional February 14, 2000 regulations;[7] and (4) the district court erred in failing to grant relief for the period from November 2000 to December 28, 2001 when the Fox Hole was allegedly subject to the unconstitutional October 9, 2000 regulations.

---

[6]The Ohio Court of Appeals upheld the state trial court's decision. *See New Castle Township Bd. of Trustees v. Brook Burcham, et al.*, 2002 Ohio 7398, 2002 Ohio App. LEXIS 7250 (Ohio Ct. App. 2002) ("*New Castle II*").

[7]The October 9, 2000 regulations apparently did not go into effect until approximately November 9, 2000. R. 26 at 118-19 (Mr. Wilt Test.).

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction over this 42 U.S.C. § 1983 action pursuant to the general federal-question statute, 28 U.S.C. § 1331. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## B. Standard of Review

We conduct de novo review of decisions granting summary judgment, drawing all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To defeat summary judgment, the nonmovant must simply show "sufficient evidence to create a genuine issue of material fact." *McLean*, 224 F.3d at 800.[8] Accordingly, to survive summary judgment in this § 1983 action, the Fox Hole Operators must demonstrate a genuine issue of material fact as to "two elements." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). First, the Fox Hole Operators must demonstrate a genuine issue of fact as to "the deprivation of a right secured by the Constitution or laws of the United States." *Id*. (internal quotation omitted). Second, they must show that "the deprivation was caused by a person acting under color of state law." *Id*. (internal quotation omitted).

---

[8]The Fox Hole Operators have argued on appeal that the Township's summary judgment motion "was improperly granted as it contained no argument or facts to support a judgment in [the Township's] favor." Fox Hole Operators Br. at 21. Although the Township's motion for summary judgment did not contain extensive arguments, the Fox Hole Operators have failed to demonstrate that the district court was unaware of certain facts that were relevant to the disposition of the Township's motion or that the Township's motion was so vague as to fail to provide notice to the Fox Hole Operators or the district court. *See Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 104 (6th Cir. 1995).

6

## C. Collateral Estoppel

The Fox Hole Operators argue at great length in their brief that the doctrine of collateral estoppel (i.e., issue preclusion) requires summary judgment in their favor and forecloses summary judgment in favor of the Township.[9] Specifically, the Fox Hole Operators rely on the following language from the state-court decision:

> Central to this court's ruling are the issues raised by the actions of the Township Trustees during their attempts to enact regulations which were obviously intended to apply to the Fox Hole. . . .
> [I]t is clear from the evidence in this case that it was the unabashed intent of the trustees [of New Castle Township] to adopt legislation which would rid their community of what they and apparently most of the citizens, viewed as a scourge.
> . . .
> The intent of regulations adopted in final form in September and October of 2000 is clear. The intent was to close down The Fox Hole — and to ensure that nothing like it comes to town in the future. This is demonstrated, for example, by the requirement that no such business can operate within 500 feet of a single-family residence in a small community filled with closely-spaced single-family residences.
> . . .
> [After The Fox Hole opened in December 1999] and perhaps even before, various citizens of New Castle Township developed, for reasons which have been demonstrated to be reasonable, an aversion to the operation of such business in their community and set about to use whatever legal means were available to discourage or prohibit the operation of that business. Their efforts found receptive ears among the elected township trustees of New Castle Township and the elected Prosecuting Attorney. These officials, then engaged in a sincere but flawed attempt to dislodge the Fox Hole from their community by using, among other things, the regulatory powers vested in township trustees by R.C. 503.52.

J.A. at 119, 126-29 (Dec. 28, 2001 Coshocton County Ct. of Common Pleas Order at 3, 10-13). The

Fox Hole Operators assert that the state court's finding of a specific intent to close the Fox Hole on

---

[9]The Fox Hole Operators also appear to assert that the doctrine of res judicata (i.e., claim preclusion) independently requires summary judgment in their favor. This argument has no merit, as the Fox Hole Operators have identified no improper attempt by the Township to litigate in this proceeding a claim that "w[as] or could have been raised" as part of the Township's prior suit to enforce the zoning provisions of the Oct. 9, 2000 regulations. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 n.6 (1982).

the part of the New Castle Township Board of Trustees should require a federal court to find that both the February 14, 2000 regulations and the October 9, 2000 regulations are unconstitutional. The district court disagreed, determining that the state court's finding of a specific intent to close the Fox Hole was dicta. J.A. at 48 (Aug. 7, 2003 Dist. Ct. Order at 6).

The Fox Hole Operators' argument has a fundamental flaw. Whether or not the finding of a specific intent to close the Fox Hole was dicta, the Supreme Court has repeatedly held that "an alleged illicit motive" is not itself sufficient to call into question the constitutionality of an ordinance regulating the secondary effects of expressive activity. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 292 (2000); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986). Whatever else may have motivated the Township to promulgate the regulations, both the preamble to the February 14, 2000 regulations and the preamble to the October 9, 2000 regulations assert that the Township wishes to regulate the harmful secondary effects of sexually-oriented businesses. *See* J.A. at 76 (February 14, 2000 Resolution); J.A. at 86-87 (October 9, 2000 Resolution). Thus, a finding that the Township acted with a specific intent to close the Fox Hole would not itself require the district court to grant summary judgment in favor of the Fox Hole Operators.

**D.  December 1999 Closure for Lack of an Occupancy Permit**

The Fox Hole Operators also assert that the December 23, 1999 closing of the Fox Hole violated their constitutional rights. The district court did not explicitly address this issue. However, testimony at the state-court bench trial demonstrates that this argument is without merit. First, Burcham conceded that he knew he needed an occupancy permit for the Fox Hole, but nonetheless

failed to obtain one prior to opening for business. J.A. at 217-18 (Burcham Test.).[10] Second, Burcham conceded that State of Ohio Structural Inspector Daniel Gallagher, R. 26 at 196 (Gallager Test.), issued a stop work notice to Burcham prior to December 23, 1999. R. 26 at 239 (Burcham Test.). Third, Fire Safety Inspector Robert J. Hertz ("Hertz") testified that on his December 23, 1999 inspection of the Fox Hole, he discovered eleven fire-code violations, R. 26 at 24-25 (Hertz Test.), two of which were particularly hazardous. R. 26 at 38-39 (Hertz Test.).[11] Given Burcham's admitted failure to comply with standard state and local business regulations prior to opening the Fox Hole for business, we conclude that the Fox Hole Operators have failed to establish a genuine issue of material fact as to whether their First and Fourteenth Amendment rights were violated. In other words, the Fox Hole Operators have failed to demonstrate how enforcement of these apparently content-neutral regulations infringes on their rights.

**E. Period During Which Fox Hole Subject to February 14, 2000 Regulations**

As the state courts have concluded that the February 14, 2000 regulations were never properly enacted, both the Fox Hole Operators' facial challenge to the validity of those regulations and the Fox Hole Operators' request for injunctive relief against the enforcement of those regulations are now moot. *See* J.A. at 130 (Dec. 28, 2001, Coshocton County Ct. Common Pleas Order at 14). With respect to the Fox Hole Operators' request for damages on the grounds that they were subject to the February 14, 2000 regulation for the period between February 14, 2000, and

---

[10]Moreover, there is no testimony suggesting that the Fox Hole Operators obtained an occupancy permit prior to the time the business was shut down on December 23, 1999.

[11]The Fox Hole Operators introduced no evidence to rebut Hertz's testimony.

9

October 9, 2000, the Fox Hole Operators have not put forward evidence suggesting they suffered any compensable damages from the February 14, 2000 regulations.

## F. Period During Which Fox Hole Subject to October 9, 2000 Regulations

The Township's unsuccessful effort to enjoin operation of the Fox Hole focused solely on the zoning provisions of the October 9, 2000 regulations. *See* J.A. at 73-74 (Verified State-Court Complaint). There is no indication in the record that the Township has attempted to enforce any other aspect of the October 9, 2000 regulations against the Fox Hole, or that the Fox Hole Operators have otherwise suffered any compensable damages from those regulations.[12] We decline to address other alleged grounds of unconstitutionality which have been listed, but not seriously argued, in the Fox Hole Operators' brief. *See Buziashvili v. Iman*, 106 F.3d 709, 719 (6th Cir. 1997).

## III. CONCLUSION

We **AFFIRM** the judgment of the district court.

---

[12]We note in particular that no evidence has been submitted suggesting that the township has attempted to enforce the health-and-safety-inspection provision of the October 9, 2000 regulations in any manner. Accordingly, we need not consider whether that provision could violate the Fourth Amendment. *Cf. Deja Vu of Cincinnati v. Union Township*, --- F.3d ---, 2005 WL1431472, at *17-19 (6th Cir. June 21, 2005) (en banc).